IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| KAPTORIA L. SANDERS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:19-cv-712 |
| DAVID BERNHARDT, In his capacity as Secretary of the Interior, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

On August 26, 2014, Tikras Technology Solutions hired Plaintiff, Kaptoria Sanders, to work as a Senior Security Engineer and Team Lead. Tikras assigned Plaintiff to work on a contract for Arrow Ventures, a joint venture of three companies, including Tikras, that worked together to bid on contracts with the Bureau of Indian Affairs.

In this role, Plaintiff, an African-American woman with more than fifteen years of experience in the industry, represented Tikras as the on-site liaison to Defendant. Plaintiff was supervised by Tikras leadership, including

1

Tikras's CEO, Jason Oliver. The specific duties of Plaintiff's job came from the Statement of Work listed in the Arrow Ventures contract. Plaintiff assigned tasks to contractors based on this Statement of Work and was responsible for scheduling the work to be performed. The BIA did not directly supervise Plaintiff, nor did the BIA have the authority to discipline any Tikras employees.

As a Team Lead, Plaintiff received high praise from many of her supervisors and even received awards for her work. While Steve Dean worked as the Associate Chief Information Security Officer for the BIA, Plaintiff excelled. Plaintiff felt comfortable working with Mr. Dean since the two previously worked together from 2010 to 2014. While Mr. Dean represented the BIA on the Arrow Ventures contract, the two interacted regularly and had a collegial work relationship.

On September 8, 2015, the BIA hired Tom Hoyler to replace Mr. Dean as the new ACISO. Immediately after starting in this role, Mr. Hoyler began to have almost daily meetings with Plaintiff to discuss the work. The relationship between Plaintiff and Mr. Hoyler began on a poor note. The two disagreed on how to best implement the contract's Statement of Work and did not see eye to eye on other details concerning the project.

Plaintiff complained to her colleagues working on the contract that Mr. Hoyler gave more attention to the white men

2

working on the contract than he gave to the African-American females in the same positions. As early as Mr. Hoyler's second week, Plaintiff drafted a list of complaints about Mr. Hoyler to share with Mr. Hoyler's supervisor.

Mr. Hoyler continually asked Plaintiff about different aspects of the contract and about specifics relating to the Statement of Work. Plaintiff also claimed that these inquiries were accompanied by unfounded criticisms of Plaintiff's work. Additionally, Mr. Hoyler disinvited Plaintiff from attending certain work meetings which she previously attended while Mr. Dean was the ACISO. Plaintiff believed all these treatments were unfair and were motivated by a distaste for seeing African-American females in leadership roles.

Plaintiff's supervisors at Tikras discussed these minor areas of improvement with Plaintiff, but she did not wish to work with Mr. Hoyler anymore. At this point, Plaintiff's supervisors made the decision to transfer her off the Arrow Ventures contract.

After Plaintiff was transferred, she moved to another contract which Tikras considered to be more prestigious and where Plaintiff received a higher salary. After Plaintiff's informal complaints to her supervisors in September went unanswered, Plaintiff filed a formal complaint on October 21, 2015, alleging that Mr. Hoyler and the BIA discriminated against

3

her on the basis of her race and sex. Until after the transfer was completed, Mr. Hoyler did not know that Plaintiff was being moved, nor did he know of Plaintiff's complaints of discrimination. The Tikras supervisors testified that Mr. Hoyler had no role in effectuating Plaintiff's transfer.

Plaintiff exhausted her remedies with the BIA. The BIA denied Plaintiff's discrimination claim on February 19, 2016, and Plaintiff appealed to the EEOC. The EEOC sent the case back to the Bureau who again dismissed the claim on September 21, 2018. Plaintiff appealed to the EEOC again and she received her right to sue letter on December 4, 2015. Plaintiff filed her Complaint in this Court on June 3, 2019, and Defendant now moves for Summary Judgment on all counts.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that no genuine dispute exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

4

U.S. 574, 586-87 (1986). Discovery has now closed, and, since there is no genuine dispute of material fact, this case is ripe for summary judgment.

First, Defendant is entitled to Summary Judgment on all counts because Plaintiff was not an employee of Defendant. Title VII claims against federal agencies can only be pursued by employees of the agency, or applicants for employment, who suffer illegal discrimination. 42 U.S.C. § 2000e-16(c). Despite Plaintiff's deposition statement that she has never been a federal employee, Plaintiff now claims that Defendant was her joint employer while she worked on the Arrow Ventures contract. To determine whether an employment relationship exists, the Fourth Circuit relies on a factor test. See <u>Butler v. Drive Auto. Indus. Of Am., Inc.</u>, 793 F.3d 404, 408-09 (4th Cir. 2015). No factor is dispositive, but the Court must use these factors to decide if a defendant exercised sufficient control over a plaintiff to be considered an employer. <u>Id.</u> "(T)he common-law element of control remains the principal guidepost in the analysis." <u>Id.</u> (internal quotations omitted).

The Arrow Ventures contract makes clear that the BIA was not Plaintiff's employer. First, according to the contract, Defendant had no authority to hire or fire any Arrow Ventures contractors. Plaintiff argues that even if this is what the contract said, Mr. Hoyler was the one who made the decision to

5

remove Plaintiff from the contract. However, even in the light most favorable to the Plaintiff, nothing indicates that Mr. Hoyler had a hand in Plaintiff's transfer. Plaintiff's supervisors at Tikras expressly denied the claim that Mr. Hoyler forced them to transfer Plaintiff. The only evidence on this point that Plaintiff has produced is the testimony of Dee Holmes-Shorter. However, Ms. Holmes-Shorter's testimony on this point was admitted as speculation and Ms. Holmes-Shorter did not claim any personal knowledge of Mr. Hoyler's role in Plaintiff's transfer. Second-hand speculation is not a sufficient basis to conclude that Defendant had the authority to hire or fire Tikras employees.

Second, Defendant did not have a supervisory role over Plaintiff. According to the contract, "Contractor personnel under this contract shall not . . . [b]e placed in a position where they are under the supervision, direction, or evaluation of a Government employee." Defendant did not evaluate Plaintiff's work or assign any work. Plaintiff collaborated with Defendant to see that the work was completed, but Plaintiff's responsibilities were given by the Statement of Work and not by any individual BIA employee.

Third, Tikras was responsible for Plaintiff's salary, insurance, and taxes. Defendant paid Tikras but did not have any role in maintaining Plaintiff's employment records.

6

Fourth, Plaintiff did not work with Defendant on the Arrow Ventures contract for a substantial length of time. Plaintiff began her work on the contract in October 2014, and was transferred in October 2015. This short, one-year period of work on the contract weighs against a finding of an employment relationship.

Fifth, Plaintiff's work was not similar to the work of BIA employees. Tikras was hired to identify security risks and areas of non-compliance within the BIA information systems. The BIA hired Tikras to have the input of a neutral third party, unrelated to the BIA. None of Plaintiff's job responsibilities as a Team Lead related to the BIA's direct mission and none of those responsibilities were being simultaneously carried out by BIA employees.

Sixth, the evidence shows that Plaintiff and Defendant did not intend to enter into an employment relationship. The Arrow Ventures contract states, "The Government and the Contractor . . . recognize and agree that no employer-employee relationship exists or will exist under the contract between the Government and the Contractor's personnel." Plaintiff has provided no evidence to undermine the contract's stated intentions.

Six of the nine <u>Butler</u> factors weigh heavily in favor of the Defendant, and those not discussed do not weigh decidedly in

7

Plaintiff's favor. After weighing the factors, it is clear that Plaintiff was not an employee of Defendant. For this reason, Defendant is entitled to Summary Judgment on all counts.

However, even if Defendant were Plaintiff's joint employer, Defendant would still be entitled to Summary Judgment on all counts. Title VII Plaintiffs can prove discrimination through direct evidence, but direct evidence is often unavailable. In the absence of direct evidence of discrimination, a plaintiff must rely on the McDonnell Douglas burden-shifting framework. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). There are three phases in the McDonnell Douglas framework: (1) the plaintiff must establish a prima facie case; (2) if plaintiff presents a prima facie case, then the Defendant has the burden to show a legitimate, non-discriminatory reason for the adverse employment action; and (3) then the burden shifts to the plaintiff to prove that the reason given by the Defendant is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Here, Plaintiff cannot establish a prima facie case on any of her claims.

First, Plaintiff has failed to present a prima facie case of Title VII racial discrimination. To present a prima facie case, a plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) a similarly situated employees outside the protected class received more favorable treatment. Coleman v. Maryland Court of

8

Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff's self-serving statements without any corroborating evidence are not sufficient to establish a prima facie case of discrimination. See Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

For purposes of this motion, Defendant does not contest that Plaintiff was in a protected class and was performing her job satisfactorily. However, Defendant argues that Plaintiff did not suffer an adverse employment action caused by the Defendant.

As previously stated, Plaintiff has not shown evidence that Mr. Hoyler took part in the decision to transfer Plaintiff from the Arrow Ventures contract. Both of Plaintiff's supervisors at Tikras stated that Mr. Hoyler never asked that Plaintiff be removed from the contract. The record does not provide any evidence that Mr. Hoyler, or any other BIA agent, caused Plaintiff to be transferred.

Any other alleged discrimination does not rise to the level of an adverse employment action. Title VII does not allow for a cause of action based on an employee being subject to additional scrutiny. An adverse employment action requires something more; it is an action that causes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). The Court does not comment on the

9

wisdom of Mr. Hoyler's criticism of Plaintiff's performance or his choice to disinvite Plaintiff from BIA meetings, but these actions do not meet the bar that Title VII sets for adverse employment actions. The Court is not a "super-personnel department" that will consider whether Mr. Hoyler made judicious management decisions, the Court only considers the legality of these decisions. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005). Other than the transfer, which the BIA did not cause, Plaintiff did not suffer an adverse employment action. For this reason, Defendant is entitled to Summary Judgment on Plaintiff's Title VII discrimination claim.

Since Plaintiff could not establish a prima facie case, the burden never shifts to Defendant, and any of Plaintiff's arguments relating to pretext need not be addressed.

Second, Defendant is entitled to Summary Judgment on Plaintiff's Title VII retaliation claim because Plaintiff cannot establish a connection between her protected activity and her transfer. Title VII prohibits employers from retaliating against employee's for engaging in protected activity.

Plaintiff began her complaints of discrimination in September, shortly after Mr. Hoyler began working as the ACISO. Plaintiff provides no evidence that Mr. Hoyler was aware of these complaints before her transfer was finalized. Since Mr. Hoyler was not aware of the complaints, Plaintiff's transfer could not have

10

been in retaliation for Plaintiff's protected activity. <u>Strothers v. City of Laurel, Md.</u>, 895 F.3d 317, 336 (4th Cir. 2018) ("(N)o causal connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity."). For this reason, Defendant is entitled to Summary Judgment on Plaintiff's Title VII retaliation claim.

Third, Defendant is entitled to Summary Judgment on Plaintiff's Title VII hostile work environment claim because Plaintiff cannot show either that the discrimination she suffered was based on her protected class or that the discrimination was sufficiently severe and pervasive. To establish a prima facie case of a hostile work environment, a Plaintiff must prove that the putative harassment was: (1) unwelcome, (2) based on a protected class or prior protected activity, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) imputable to her employer. <u>See Pueschel v. Peters</u>, 577 F.3d 558, 564-65 (4th Cir. 2009).

Plaintiff's claim fails to prove that any alleged discrimination was based on Plaintiff's class membership. The discrimination that Plaintiff suffered was based on unfair criticisms of her work performance and management decisions that unfairly prejudiced her. These allegations do not give a sufficient basis to claim that Mr. Hoyler made these inquiries and criticisms because of Plaintiff's protected class. The Court "cannot jump

11

from the mere existence of criticism to the conclusion that the criticism was . . . motivated [by a protected class]." Webster v. Johnson, 126 F. App'x 583, 587-88 (4th Cir. 2005). The allegedly offensive comments do not relate in any way to Plaintiff's protected class. Even though there are cases where discrimination is subtle and the employer takes care to hide its discriminatory motives, Title VII hostile work environment claims require specificity that shows at least some connection between the discrimination and a plaintiff's protected class. That connection is not apparent in this case.

Furthermore, the activity that Plaintiff complains of was not so severe or pervasive that it altered the conditions of Plaintiff's employment. A plaintiff "must clear a high bar in order to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). The majority of Plaintiff's complaints revolve around Mr. Hoyler criticizing Plaintiff's performance. Plaintiff alleges that Mr. Hoyler undermined her reputation by unfairly criticizing Plaintiff's work to Tikras management

As stated by multiple deponents, including Plaintiff, Mr. Hoyler's criticisms of Plaintiff's work were minor ones. Even if Plaintiff believed that these were unfair characterizations of her work, pointing out areas of improvement does not meet the high bar of severe and pervasive harassment. As the Fourth Circuit noted,

12

"(W)ithout the freedom to criticize performance, an organization simply cannot function." Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000). Even if the criticisms are unfounded to some degree, "employment discrimination law is not a vehicle for substituting the judgment of a court for that of the employer." Id. (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir. 1995). The harassment alleged by Plaintiff does not rise to the level of severe and pervasive. For this reason, Defendant is entitled to Summary Judgment on Plaintiff's Title VII hostile work environment claim.

For the foregoing reasons, this Court finds that Defendant is entitled to summary judgment on all counts. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 28, 2020

13